**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-81481-ELFENBEIN

**ELTON TAYLOR**,

      Petitioner,

v.

**RICKY D. DIXON,**
**SEC'Y, FLA. DEP'T OF CORR.**,

      Respondent.

_____/

## ORDER DENYING HABEAS PETITION

**THIS CAUSE** is before the Court on Petitioner Elton Taylor's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (the "Petition"), ECF No. [1].[1] Petitioner challenges the constitutionality of his conviction and sentence, entered following a jury trial in Case Number 2013-CF-011180 in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, for the following offenses: first-degree murder with a firearm (Count I); false imprisonment (Count II); burglary of an occupied dwelling with a firearm (Count III); aggravated assault with a firearm (Counts V-VII); and possession of a firearm by a convicted felon (Count VIII). *Id.*; ECF No. [7-1] at 30.

On December 17, 2024, this Court issued an Order to Show Cause directing Respondent to file a memorandum of fact and law to show cause as to why the Petition should not be granted. *See* ECF No. [5]. On February 7, 2025, Respondent filed a Response to Order to Show Cause with attached appendices. *See* ECF Nos. [7] and [8]. On April 8, 2025, Petitioner filed a Reply for

---

[1] Petitioner is currently incarcerated at Taylor Correctional Institution Annex in Perry, Florida.

which he obtained leave of Court.  *See* ECF No. [11].  The Court has carefully considered the Parties' submissions, the record, and the applicable law.  For the reasons set forth below, the Petition, **ECF No. [1]**, is **DENIED on the merits**.

## I.      INTRODUCTION

### A.  Factual Background

Petitioner and Watisha Wallace were married and resided together in Palm Springs, Florida. *See* ECF No. [8-2] at 55.  Over time, the marriage deteriorated, and Watisha obtained a restraining order against Petitioner.  *Id.* at 56.  She thereafter moved into the home of her parents — Herman and Ruby Wallace — in West Palm Beach, bringing her daughter, A.D., with her.  *Id.* at 57.

On October 21, 2013, Petitioner forcibly entered the parents' residence while armed with a firearm.  *Id.* at 70–71.  Once inside the residence, he pointed the firearm at Herman, Ruby, and A.D. and threatened them.  *Id.* at 70–71, 110, 167–68.  He then located Watisha inside the home and forced her outside into the backyard.  *Id.* at 113–15.  Moments later, Herman, Ruby, and A.D. heard multiple gunshots coming from the backyard.  *Id.* at 73–74, 117–22, 170–72.  Law enforcement officers responded to the scene and found Watisha deceased in the backyard from multiple gunshot wounds to the head, torso, and arm.  *Id.* at 199–203, 445–50.  Petitioner was found nearby with a self-inflicted gunshot wound and was transported for medical treatment.  *Id.* at 204.  Petitioner concedes that he entered the parents' residence and "shot and killed" Watisha. *See* ECF No. [1] at 16.  He further admits that he shot himself but survived.  *Id.*

### B.  Procedural Background

A grand jury in the State of Florida returned an Indictment charging Petitioner with first-degree murder with a firearm (Count I), kidnapping with a firearm (Count II), burglary of an

occupied dwelling with a firearm (Count III), aggravated battery with a firearm (Count IV), three counts of aggravated assault with a firearm (Counts V-VII), and possession of a firearm or ammunition by a convicted felon (Count VIII).  *See* ECF No. [7-1] at 17–20.  Following a jury trial, Petitioner was found guilty of first-degree murder with a firearm, the lesser-included offense of false imprisonment, burglary of an occupied dwelling with a firearm, three counts of aggravated assault with a firearm, and possession of a firearm by a convicted felon.  *See* ECF No. [7-1] at 22–28.  The jury found him not guilty of aggravated battery with a firearm.  *Id.* The state trial court imposed the following sentences: life imprisonment for first-degree murder; five years' imprisonment for false imprisonment; life imprisonment for burglary; fifteen years' imprisonment for possession of a firearm by a convicted felon; and five years' imprisonment for each aggravated assault count, all to run consecutively to each other and to the murder sentence.  *See* ECF No. [7-1] at 30–45.

On direct appeal, Petitioner raised four claims of error: (1) the trial court erred in permitting the prosecution to introduce testimony that Watisha had obtained a restraining order against him; (2) the trial court erred in denying his motion for a mistrial based on the prosecutor's improper closing arguments; (3) the trial court erred in refusing to instruct the jury on the definition of premeditation as requested; and (4) the trial court erred in denying his motion to correct a sentencing error where it had not orally imposed consecutive sentences as reflected in the written sentencing order.  *See* ECF No. [7-1] at 47–88.  The Florida Fourth District Court of Appeal affirmed Petitioner's convictions but reversed in part the sentences, directing that the aggravated assault sentences run concurrently with one another.  *See Taylor v. State*, 276 So. 3d 817 (Fla. 4th DCA 2019).  Following the remand, on October 18, 2019, Petitioner was resentenced accordingly.  *See* ECF No. [7-1] at 129–32.

3

On October 27, 2020, Petitioner filed a Motion to Correct Illegal Sentence, alleging error in the imposition of consecutive sentences and the failure to impose mandatory minimum sentences for firearm offenses.  *See* ECF No. [7-1] at 134–37.  On November 1, 2021, the state postconviction court summarily denied the motion.  *See* ECF No. [7-1] at 139–42.  Petitioner did not appeal that ruling.

On July 21, 2021, Petitioner, through counsel, filed another Motion for Postconviction Relief, which he later amended to comply with certain changes to the Florida Rules of Criminal Procedure.  *See* ECF No. [7-1] at 144-180.  In this latest motion, he alleged that counsel rendered ineffective assistance by failing to pursue an insanity defense, failing to investigate or call witnesses in support of that defense, conceding guilt, and committing cumulative error.  *See* ECF No. [7-1] at 163–180.  The postconviction court held an evidentiary hearing on the insanity-related claims and summarily denied the third claim relating to Defendant's concession of guilt.  *See* ECF No. [7-1] at 212–218.

Following the evidentiary hearing and post-hearing submissions, ECF No. [7-1] at 219–241, the postconviction court entered a written order denying relief, ECF No. [7-1] at 243–252.  Petitioner appealed, and the Florida Fourth District Court of Appeal per curiam affirmed Petitioner's convictions and sentences.  *See Taylor v. State*, 396 So. 3d 238 (Fla. 4th DCA 2024).  The mandate issued on November 4, 2024.  *See* ECF No. [7-2] at 50–51.

Petitioner then filed his Petition in this Court on November 23, 2024.  *See* ECF No. [1].  In his Petition, he raises three grounds for relief:

(1) The state court's denial of his claim on direct appeal — concerning the prosecutor's allegedly improper comments on his right to remain silent — resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* ECF No. [1-2] at 2.

(2) The state court's denial of ground one of his Motion for Postconviction Relief, alleging ineffective assistance of trial counsel for failing to pursue an insanity defense, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* ECF No. [1-2] at 4.

(3) The state court's denial of ground two of his Motion for Postconviction Relief, alleging ineffective assistance of trial counsel for failing to investigate and call witnesses in support of an insanity defense, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* ECF No. [1-2] at 9.

## II.    LEGAL STANDARD

### A.  28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a district court's review of a state prisoner's federal habeas corpus petition. *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 43 (2011)). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Section 2254(d) provides that a federal court may not grant habeas relief to a state prisoner on "any claim that was adjudicated on the merits in State court proceedings" unless the state court's

decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)–(2).   A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law.  *Id.* at 410.   Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas corpus relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."  *Wilson v. Sellers*, 548 U.S. 122, 125 (2018).

If no explanation accompanies the state court's merits determination, federal courts should "look through the unexplained decision to the last related state-court decision that does provide a rationale" and "presume that the unexplained decision adopted the same reasoning."  *Id.* Furthermore, a decision still qualifies as an adjudication on the merits when it "addresses some but not all of a defendant's claims."  *Johnson v. Williams*, 568 U.S. 289, 298 (2013).  "The Supreme Court [has] observed that there are good reasons why state courts do not address every single argument made by a defendant, including 'instances in which a state court may simply

regard a claim as too insubstantial to merit discussion.'" *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1212 (11th Cir. 2013) (quoting *Johnson*, 568 U.S. at 299).

In sum, AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citation omitted). The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019). Accordingly, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 186 (internal quotation marks omitted).

## B. Exhaustion and Timeliness

Respondent acknowledges the Petition is timely but seeks dismissal of Petitioner's second ground based on his failure to fully exhaust that ground. *See* ECF No. [6] at 6–8. "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id*. (internal quotation marks omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). "In Florida, exhaustion usually requires not only the filing of a [Fla. R. Crim. P.] 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (alteration in original).

To fairly present the federal nature of the claim, "[i]t is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 275. The Eleventh Circuit has further observed that proper exhaustion "requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (internal quotation marks omitted). Thus, exhaustion requires that state prisoners "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

### C. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . ." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's

8

performance was deficient, falling below an objective standard of reasonableness; and (2) petitioner suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687–88.

To establish deficient performance, Petitioner must show that, considering all of the circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013). Further, "[s]trategic decisions of counsel generally cannot establish deficient performance, even if the strategy appears wrong in retrospect." *Ferguson v. Crews*, No. 13-CV-60320, 2015 WL 13912233, at *9 (S.D. Fla. Jan. 30, 2015). "The decision is only considered ineffective if it was so patently unreasonable that no competent attorney would have made it." *Id.* "Counsel's effectiveness is reviewed considering the totality of the circumstances surrounding his overall performance." *Id.* Petitioner bears the burden of proof that trial counsel's performance was deficient. *See* 28 U.S.C. § 2254(d).

As for the showing of prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*

if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013). And, a Section 2254 petitioner must provide factual support for his contentions regarding trial counsel's performance — not simply bare or conclusory allegations. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).

Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provides the relevant inquiry in this case: to obtain habeas relief, a petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

### III.    DISCUSSION

### A. Ground One – Prosecutor's Improper Comments on Petitioner's Right to Remain Silent

Petitioner argues the state court's rejection of his direct-appeal claim concerning the prosecutor's allegedly improper comments on his right to remain silent was contrary to, or involved an unreasonable application of, clearly established federal law under *Doyle v. Ohio*, 426 U.S. 610 (1976). In *Doyle*, the United States Supreme Court held that due process is violated when a defendant's post-arrest, post-*Miranda* silence is used against him for impeachment purposes. *Id.* at 619. Petitioner contends the prosecutor crossed that constitutional line during closing argument.

At trial, defense counsel objected to the following remark as an impermissible comment on Petitioner's right to remain silent:

> Does the witnesses testimony agree with the other testimony and other evidence in the case?
>
> Mr. & Mrs. Wallace, as well as [A.D.'s] testimony is consistent at that particular time with the evidence that was collected by CSI, the evidence that was collected and compared that Celynda Sowards

> saw, it was consistent throughout.  And like I said, you might not
> have the defendant's words, but you have his actions.

ECF No. [8-2] at 672–73.

The trial court sustained the objection and required the prosecutor to explain what she was referring to.  *Id.* at 673–74.  When the prosecutor explained that she was referring to Petitioner's conduct at the time of the incident, rather than to his silence, the trial court instructed her to clarify the point for the jury.  *Id.*  The prosecutor then stated:

> I want you to remember that from the law that is applied in this case,
> that you can look at his actions of how he came into the house, and
> you recall his words of wanting and demanding his wife.

*Id.*

At the conclusion of closing arguments, defense counsel moved for a mistrial based on improper comments.  *Id.* at 723.  The trial court denied the motion.  *Id.* at 724.  On direct appeal, Petitioner argued, citing *Doyle*, that the prosecutor's statement was fairly susceptible of being interpreted as a comment on his exercise of the right not to testify and that the denial of the motion for mistrial constituted an abuse of discretion.  *See* ECF No. 7-1 at 73–75.  The Fourth District Court of Appeal per curiam affirmed without a written opinion.  *Id.* at 127.

The question before this Court is whether the state court's rejection of Petitioner's claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  On this record, it was not.

To begin, *Doyle* addressed the use of a defendant's silence following *Miranda* warnings to impeach an exculpatory story told for the first time at trial.  426 U.S. at 617–19.  *Doyle* did not provide a particular test for determining when a prosecutor's statement amounts to a forbidden comment on silence.  On this issue, federal courts — including the Eleventh Circuit — have long asked whether the statement was "manifestly intended" to comment on the defendant's silence or

was of such a character that the jury would "naturally and necessarily" take it that way. *United States v. Knowles*, 66 F.3d 1146, 1162–63 (11th Cir. 1995).

Measured against that framework, the prosecutor's comment here does not warrant habeas relief. The challenged statement must be evaluated in context, not in isolation. *See Darden v. Wainwright*, 477 U.S. 168, 179 (1986). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). When the remark is placed back into the flow of the State's closing argument, it is apparent that the prosecutor was arguing that Petitioner's intent and culpability could be inferred from his conduct during the offense. Indeed, throughout closing argument, the prosecutor repeatedly emphasized that Petitioner's actions, rather than any express declaration of intent, established the charged crimes. For example, in arguing aggravated assault, the prosecutor told the jury:

> So we have aggravated assault, at the time Elton Taylor appeared to have the ability to carry out the threat. You see the law doesn't say that someone has to say to you that I'm going to kill you, or I am going to hurt you, but we know often times actions speak louder than words, and in this instance when he came back in the house and he went upstairs, he pointed the gun at both of them.

ECF No. [8-2] at 656–57.

Similarly, while discussing the false-imprisonment and murder-related evidence, the prosecutor argued:

> This isn't a situation where the defendant called her up and said hey, let's go somewhere. He forced her to go with him. And while he might not have used words, his actions and demeanor rise to the level of a threat.

*Id.* at 662.

While arguing premeditation, the prosecutor stated:

> The law tells you that the decision must be present in the mind at the time of the killing. What do we know right before he killed her? He told her he was going to kill her. Did his moment to reflect happen between shots? Yet still he shot her four more times. While we may not have the words, you have his actions. And the logical is undeniable, ladies and gentlemen, he intended to kill Watisha Wallace. He went there for that purpose.

*Id.* at 669.

These comments are critical to the inquiry at issue. They show the prosecutor's theme was that the jury could infer Petitioner's intent from what he did: entering the residence armed, demanding his wife, forcing her outside, threatening the occupants, and repeatedly shooting Watisha. In that context, the challenged statement that "you might not have the defendant's words, but you have his actions" was consistent with the State's repeated contrast between spoken words and observable conduct. The prosecutor was arguing evidentiary inference, not calling attention to Petitioner's decision not to testify.

The trial court sustained the objection and directed the prosecutor to make clear what "actions" she meant, and the prosecutor did so by referring to Petitioner's conduct inside the home and his demands for Watisha. That immediate clarification substantially undercuts Petitioner's contention that the jury would naturally and necessarily have understood the original remark as a comment on his failure to testify.

Nor was the remark manifestly intended to comment on Petitioner's silence. The comment arose during a discussion of the consistency between eyewitness testimony and the physical evidence. Nothing in the record suggests that the prosecutor was inviting the jury to draw an adverse inference from Petitioner's failure to take the stand.

Likewise, the remark was not of such character that the jury would naturally and necessarily take it as a comment on Petitioner's failure to testify. In ordinary usage, a contrast

between a defendant's "words" and "actions" can refer simply to the absence of verbal statements during the crime itself, as opposed to the physical acts proved at trial. That is especially true here because the prosecutor had already used nearly identical phrasing prior while arguing premeditation. Given that repeated theme, a reasonable jurist could conclude that the jury would have understood the remark as referring to the evidence of Petitioner's conduct during the offense, not his silence at trial.

Petitioner likewise failed to establish prejudice. Even if there were error — which there was not — to prevail on a constitutional claim based on improper comments, Petitioner must show that the error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Petitioner has not made that showing. At trial, Herman, Ruby, and A.D. each testified that Petitioner entered the residence armed with a firearm, demanded Watisha, forced her outside, and threatened those present. Their accounts were consistent with — and reinforced by — the physical and forensic evidence. Watisha was discovered deceased from multiple gunshot wounds, and Petitioner was located nearby with a self-inflicted gunshot wound. The firearms, DNA, and crime-scene evidence all aligned with the State's theory. Petitioner further concedes in his Petition that he shot and killed Watisha. On this record, Petitioner has not shown that the challenged remark had a substantial and injurious effect on the jury's verdict.

In sum, when the prosecutor's statement is considered in the context of the closing argument as a whole, the comment was not manifestly intended as a reference to Petitioner's silence, nor was it of such a character that the jury would naturally and necessarily interpret it as such. The trial court's immediate intervention and the prosecutor's prompt clarification further dispelled any risk of constitutional error. Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of, *Doyle* or any other clearly established Supreme

14

Court precedent. And even assuming error, Petitioner has not shown that the remark had a substantial and injurious effect on the verdict under *Brecht*. For the foregoing reasons, Petitioner is not entitled to habeas relief on Ground One.

### B. Ground Two – Ineffective Assistance of Trial Counsel for Failing to Pursue an Insanity Defense

Next, Petitioner contends that the trial counsel rendered ineffective assistance by failing to investigate and pursue an insanity defense at trial. In state postconviction proceedings, Petitioner asserted that he informed counsel he was experiencing delusions around the time of the offense, that counsel was aware of these circumstances, and that an insanity defense would have been viable. *See* ECF No. [7-1] at 166–70. The postconviction court rejected this claim, expressly finding the testimony of trial counsel at the evidentiary hearing credible. *Id.* at 249–50. The court concluded that counsel was not deficient because she investigated the possibility of an insanity defense and reasonably determined that no good faith basis existed to pursue it. *Id*. Specifically, the court found that multiple mental health experts had evaluated Petitioner and did not support an insanity defense, and that counsel's investigation of fact witnesses likewise yielded no support for such a theory. *Id*. The court further found that counsel, after consulting with Petitioner, elected to pursue a heat-of-passion defense and that Petitioner was aware that an insanity defense would not be presented. *Id*. The court thus determined that counsel's decision was a strategic one made after a reasonable investigation. *Id*.

Petitioner first argues the state court's denial of this claim is contrary to *McCoy v. Louisiana*, 584 U.S. 414 (2018), which held that counsel may not concede a defendant's guilt over the defendant's express objection. *See* ECF No. [1-2] at 5.[2] He asserts that he wished to pursue

---

[2] Respondent concedes that Grounds One and Three are properly exhausted but contends that Ground Two is unexhausted because Petitioner's reliance on *McCoy* was not fairly presented to the state courts. The Court disagrees. To satisfy the exhaustion requirement, a petitioner must present both the factual and legal

an insanity defense and that the postconviction court failed to account for this preference when deciding whether his counsel performed deficiently. *See* ECF No. [1-2] at 5-6; ECF No. [8-4] at 35. This argument is unavailing. *McCoy* draws a distinction between decisions reserved to the client — such as the objective of maintaining innocence — and strategic decisions regarding how to achieve that objective. 584 U.S. at 422. Here, the record shows that counsel elected to pursue a heat-of-passion theory, which necessarily conceded guilt to a lesser offense, but Petitioner expressly agreed to that strategy on the record to avoid the possibility of the death penalty. *See* ECF Nos. [8-2] at 48–49; [8-4] at 29, 41–42. Under these circumstances, counsel's decision falls within the realm of permissible strategic judgment, not the type of autonomy violation addressed in *McCoy*.

Petitioner next argues the postconviction court's finding — that there was no factual basis to pursue an insanity defense — was an unreasonable determination of the facts. *See* ECF No. [1-2] at 6. He emphasizes that no expert affirmatively testified that he was sane. This argument misapprehends both the record and the governing burden of proof. In Florida state court postconviction proceedings, the defendant bears the burden of establishing entitlement to relief. *See* Fla. R. Crim. P. 3.850(h)(8)(B). And under Florida law, a defendant asserting insanity must establish that he suffered from a mental infirmity, disease, or defect such that he either did not

---

basis of his claim to the state court and must alert the state court to the federal constitutional nature of the claim. *See Snowden v. Singletary*, 135 F. 3d 732, 735 (11th Cir. 1998). Upon review of the record, the Court finds that Petitioner has met this standard. Ground Two arises from Petitioner's claim that trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to pursue an insanity defense. Petitioner presented this same underlying claim to the state court, invoking his federal constitutional right to effective assistance of counsel, ECF No. [7-1] at 166. Respondent's argument — that Petitioner's reliance on *McCoy* transforms the claim into a new and unexhausted legal theory — is unpersuasive. While *McCoy* addresses a defendant's autonomy rather than counsel's performance under *Strickland*, Petitioner does not assert a standalone *McCoy* claim. Rather, he relies on *McCoy* as persuasive authority informing the reasonableness of counsel's conduct. This does not alter the fundamental nature of the claim. Accordingly, the Court concludes that Petitioner fairly presented Ground Two to the state court and has, therefore, satisfied the exhaustion requirement.

know what he was doing or did not know that what he was doing was wrong.  Fla. Stat. § 775.027(1)–(2); *Hall v. State*, 568 So. 2d 882, 885 (Fla. 1990).

The record supports the postconviction court's conclusion that counsel reasonably determined this standard could not be met.  Counsel testified that, prior to her involvement, the defense had retained two experts to evaluate Petitioner for sanity and that neither supported an insanity defense.  *See* ECF No. [8-4] at 27–28.  An attorney is entitled to rely on the opinions of qualified mental health experts in determining whether to pursue such a defense.  *See Hendricks v. Calderon*, 70 F.3d 1032, 1038 (9th Cir. 1995).  In addition, counsel testified that she conducted her own investigation by interviewing witnesses Petitioner identified.  Those witnesses did not corroborate the symptoms Petitioner reported, and no fact witness supported an insanity theory. *See* ECF Nos. [8-4] at 30–31, 39–40, 44.

Although Petitioner presented testimony from his pastor indicating that Petitioner appeared to experience spiritual distress, hallucinations, and beliefs involving witchcraft, that testimony alone does not establish a reasonable probability that Petitioner could meet Florida's clear-and-convincing standard for legal insanity.  *Id.* at 17–18; *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1212 (11th Cir. 2021).  Nor does evidence of emotional distress or unusual beliefs necessarily rise to the level of a legally cognizable mental infirmity that negates criminal responsibility.

The evidentiary record further reflects that counsel did not simply accept prior counsel's assessment at face value.  Rather, she discussed Petitioner's reported symptoms with prior counsel and co-counsel, reviewed the available information, and independently investigated potential witnesses.  She fully considered Petitioner's statements that he was seeing things, experiencing an uncontrollable urge for blood, seeking spiritual intervention, and lacking memory of the offense.

17

*See* ECF No. [8-4] at 36–38.  She nonetheless found no expert or lay evidence that would support a viable insanity defense.  At most, the evidence suggested that Petitioner was distraught in the months preceding the offense, not that he suffered from a qualifying mental infirmity at the time of the crime.  *Id.* at 45.

Petitioner faults counsel for not obtaining written reports from the evaluating experts.  But counsel testified that no reports were generated because the experts did not find Petitioner insane.  *Id.* at 27.  More importantly, counsel did not end her inquiry there; she continued to investigate through other sources and reasonably concluded that the evidence did not support the defense.  The Sixth Amendment does not require counsel to pursue every conceivable line of investigation where the available information already demonstrates that a proposed defense lacks evidentiary support.  *See Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980) ("[C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers.").

In light of this record, the state postconviction court reasonably concluded that counsel's decision not to pursue an insanity defense was a strategic choice made after a thorough investigation.  *See Strickland*, 466 U.S. at 690–91.  Counsel instead pursued a heat-of-passion theory aimed at avoiding the death penalty — a strategy consistent with the agreed-upon objective of the defense.  Without evidentiary support for insanity, counsel's decision to forego that defense did not constitute deficient performance.  *See Patton v. State*, 878 So. 2d 368, 376 (Fla. 2004) ("Counsel's decision to forego the insanity defense was not unreasonable under *Strickland* since she had no evidence that [defendant] suffered from a mental disease or defect."); *Whitfield v. Sec'y, Dep't of Corr.*, No. 10-CV-1638, 2013 WL 6198855, at *5 (M.D. Fla. Nov. 27, 2013) (denying defendant's claim that counsel should have presented an insanity defense, noting that defendant

"has not shown that trial counsel's actions amounted to deficient performance as counsel did investigate [defendant's] mental health.").

Petitioner likewise cannot establish prejudice. Given the absence of expert support and the lack of corroborating fact witnesses, there is no reasonable probability that a jury would have found, by clear and convincing evidence, that Petitioner met Florida's standard for legal insanity. *See* Fla. Stat. § 775.027(1). Even if counsel had pursued the defense, Petitioner has not shown that the outcome of the trial would have been different. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record. Petitioner is, therefore, not entitled to habeas relief on Ground Two.

### C. Ground Three – Ineffective Assistance of Trial Counsel for Failing to Investigate and Call Witnesses in Support of an Insanity Defense

Petitioner finally claims that trial counsel rendered ineffective assistance by failing to investigate and call his pastor as a witness in support of an insanity defense. The postconviction court rejected this claim, finding that counsel was not deficient because she was aware of the pastor and reasonably determined that his testimony, standing alone, would not establish a viable insanity defense. *See* ECF No. [7-1] at 250–51. Petitioner argues that this determination was unreasonable, emphasizing that lay witnesses may provide evidence relevant to insanity. *See Hixon v. State*, 165 So. 2d 436, 441 (Fla. 2d DCA 1964) ("In a criminal prosecution, a lay or nonexpert witness may be permitted to give an opinion regarding the sanity or insanity of the person whose mental condition is in issue, but he cannot express general opinions as to sanity nor give opinions independent of facts and circumstances within his own knowledge.").

The record, however, supports the state court's conclusion. Counsel testified that Petitioner informed her about the pastor, ECF No. [8-4] at 29, and that she investigated all witnesses

19

Petitioner identified.  None of those witnesses — including the pastor — provided information sufficient to support an insanity defense.  *Id.* at 30–31.  Importantly, counsel further recalled that the pastor's interactions with Petitioner occurred approximately one week before the offense and elected to present his testimony during the penalty phase rather than during the guilt phase.  *Id.* at 30.  Thus, the record reflects that counsel did not ignore the pastor as a witness but instead considered his potential testimony and made a strategic decision regarding its use at the penalty phase.  That decision falls squarely within the wide range of reasonable professional judgment.  Thus, the state postconviction court's finding that counsel conducted a reasonable investigation and made a strategic choice is not an unreasonable determination of the facts in light of the record.

Nor can Petitioner establish prejudice.  As discussed, Florida law requires a defendant to prove insanity by clear and convincing evidence, including that he suffered from a mental infirmity, disease, or defect and, as a result, did not know what he was doing or that his conduct was wrong.  Fla. Stat. § 775.027(1)–(2).  The pastor's testimony — that Petitioner appeared discouraged, was experiencing hallucinations, and believed he was under a voodoo or witchcraft spell, ECF No. [8-4] at 17–18 — does not, without more, establish a reasonable probability that a jury would have found those elements satisfied.  *See Hayes*, 10 F.4th at 1212.

Accordingly, the state court reasonably concluded that counsel's performance was not deficient and that Petitioner suffered no prejudice.  Its denial of this claim was neither contrary to, nor an unreasonable application of, *Strickland*.  Petitioner is, therefore, not entitled to habeas relief on Ground Three.

## IV.   EVIDENTIARY HEARING

Petitioner has not requested an evidentiary hearing, and, in any event, no hearing is warranted on the merits of his claims.  As the Eleventh Circuit has explained, "before a habeas

petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015).

Even where that threshold is met, a federal court must then determine whether an evidentiary hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The burden rests with the petitioner to establish that such a hearing is necessary. *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016).

Here, Petitioner has not made the requisite showing. As discussed, he has failed to demonstrate any clearly established federal-law error or unreasonable determination of fact by the state courts based on the existing record. Moreover, the state court record fully resolves and refutes the factual allegations underlying each of his claims. Accordingly, an evidentiary hearing is neither necessary nor appropriate in this case.

## V.       CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). Courts issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

"Where a district court has rejected a petitioner's constitutional claims on the merits," "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, reasonable jurists would not find the merits in this decision debatable. The Court, therefore, does not issue a COA.

## VI. CONCLUSION

Based upon the foregoing, it is **ORDERED** and **ADJUDGED** that the Petition for Writ of Habeas Corpus, **ECF No. [1]**, is **DENIED on the merits.** No Certificate of Appealability shall issue. The Clerk of Court shall **CLOSE** the case**.**

**DONE and ORDERED** in Chambers in Miami, Florida on May 1, 2026.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record